**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Applicant,**

v.

**KLOSTER CRUISE LIMITED d/b/a Norwegian Cruise Lines, Respondent.**

No. 89-0732-CIV.

United States District Court, S.D. Florida.

July 26, 1990.

Angelo Filippi, Sr. Trial Atty., E.E.O.C., for applicant.

J. Alberto Gonzalez-Pita, McDermott, Will & Emery, Miami, Fla., for respondent.

**ORDER DENYING ENFORCEMENT OF ADMINISTRATIVE SUBPOENA**

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Application for Order to Show Cause Why Administrative Agency Subpoena Should Not Be Enforced.

THE COURT has considered the Application and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the said Application be, and the same is hereby DENIED.

I

This is an action brought by the Equal Employment Opportunity Commission for enforcement of subpoenas, *duces tecum*, issued by the Commission, pursuant to 42 U.S.C. sec. 2000e-9. The EEOC, of course, is the federal agency charged with the administration, interpretation and enforcement of Title VII of the Civil Rights Act of 1964. Among its responsibilities, the EEOC investigates charges of unlawful employment practices under 42 U.S.C. sec. 2000e-2 and 3. In this case, the EEOC is trying to investigate two separate charges of unlawful employment practices made against Kloster Cruise Limited d/b/a Norwegian Cruise Lines. The first charge is made by Judy B. Corbeille. She alleges that she has been discriminated against and discharged from her position because of her pregnancy. The second charge is made by Fernando Watson. He alleges that Kloster discriminated against him on account of his race. Both of these individu-

als worked aboard Bahamian registered cruise ships belonging to the respondents.

In order to investigate the two cases, the EEOC issued two subpoena's *duces tecum* on November 30, 1988, requiring Norwegian Cruise Lines to produce certain evidence relating to the charges, including evidence that could be relevant to the issue of the EEOC's jurisdiction over the respondent. On December 9, 1988, the Respondent filed a petition to revoke the subpoenas. Essentially, the Respondent argued that the EEOC had no jurisdiction to even investigate the charges made against it. The Respondent first noted that both of the individuals claiming discrimination actually worked for Ivanhoe Catering International, Ltd ("Ivanhoe"), a wholly owned Bahamian subsidiary of the Respondent. Ivanhoe, the respondent claims, does not conduct or transact business in the United States.[1] Respondent argued before the commission that Title VII, and hence the commission's jurisdiction, does not extend to alleged employment discrimination against U.S. citizens who are employed abroad by a foreign corporation owned by foreign nationals.

The commission denied Kloster's petition to revoke the subpoenas. Starting with the premise that Title VII applies to employment discrimination against U.S. citizens working in the U.S., the commission concluded that the "effective situs of the charging party's employment is the United States." The commission based this decision on the fact that Respondent has its principal executive offices in Miami, recruits in the U.S., has a sales staff of 31 district managers based in various cities in the U.S., 95% of respondent's business is generated from North American ticket sales, and the charging parties each worked on ships that docked each week in Miami. The commission also disregarded the separate corporate status of Ivanhoe. It reasoned that Ivanhoe and Kloster are so closely related in their activities and management that they constitute an integrated enterprise. For purposes of title

VII, therefore, they should be treated the same.

The EEOC now brings this action since the respondents have refused to comply with the subpoenas. Kloster has not submitted any memoranda opposing the EEOC's position in this matter. Instead, it has submitted a notice of supplemental authority and moved to deny a petition for leave to file an amicus curiae brief. Kloster evidently has chosen to rely on the exhibits to the pleadings, including the legal positions taken therein before the administrative board.

## II

The only issue in this case is whether the EEOC has jurisdiction to investigate the charges of discrimination filed against Kloster. The parties have not raised any other issues in the proceedings below and they certainly have not raised any other issues in this proceeding. If Title VII applies to the misconduct in question, then the EEOC has the authority to investigate the alleged misconduct.

Title VII applies to "employers." Subject to two exceptions not applicable in this context, the act defines employers to mean:

a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person ...

42 U.S.C. sec. 2000e(b).

Present decisions interpreting the above language indicate that whether or not the EEOC possesses jurisdiction to investigate the present claims depends on whether the charging parties were working abroad or working in this country. Although the case law concerning the extraterritorial application of Title VII is rather sparse, most of it consistently holds that the act does not apply to workers, be they American or not, who work abroad either for American or foreign companies. *Lavrov v. NCR Corporation*, 600 F.Supp. 923 (S.D.Ohio

---

**1.** The record indicates that Ivanhoe does all of its work on board the respondent's ships, many of which, including the ones on which the Corb-

eille and Watson worked on, dock each week in Miami.

1984) (Title VII does not apply to foreign corporation with respect to its employment of persons in foreign countries); *Ali Boureslan v. Aramco, Arabian American Oil Co and Aramco Service Co.*, 892 F.2d 1271 (5th Cir.1990) (Title VII does not regulate the practices of United States employers with regard to their employment of United States citizens outside of the United States.) *But see Bryant v. International Schools Services*, 502 F.Supp 472 (D.N.J.) *reversed on other grounds*, 675 F.2d 562 (3rd Cir.1982) (Title VII is to be given extraterritorial effect and applied to American corporation's employment practices in a foreign country.) Those cases argue, based on Supreme Court case law, that absent a clear indication from Congress, federal laws regulating employee/employer relations do not apply to conduct outside the borders of the United States. Otherwise, respect for the right of nations to regulate conduct within their own borders, a fundamental concept of sovereignty, is too lightly tossed aside. *See Boureslan*, 892 F.2d at 1272; *Lavrov*, 600 F.Supp at 931.

On the other hand, the case law does indicate that any company, foreign or domestic, employing workers in the United States falls within the reach of Title VII. *Ward v. W & H Voortman, Ltd.*, 685 F.Supp 231 (M.D.Ala.1988) (The court held that any company, foreign or domestic, that elects to do business in this country falls within Title VII's reach and should, and must, do business here according to its rules prohibiting discrimination.)

The case before this court, however, differs from those cited above. Whereas in the cases cited above the employees worked almost exclusively either abroad or in the United States, in this case the charging parties place of employment is more dynamic. As part of the crew of a cruise ship which would begin its weekly trip in Miami and continue at various ports of call throughout the Caribbean, the charging parties actually worked both in the United States and elsewhere. For this reason, this Court is faced with a question of first impression.

## III

The Court finds that Title VII does not apply to the alleged conduct of the respondent. On the one hand, as stated in the findings of the Commission, the record does show that Kloster conducts business in the United States. The charging parties, moreover, clearly performed some of their job-related duties while the ship was docked in the port of Miami and while the ships were within the territorial waters of the United States. To the extent the charging parties did their work in the U.S., existing case law would support a finding of jurisdiction.

Finding that Title VII applied in this instance, however, would undermine the sovereignty of another country. The "well established rule of international law [is] that the law of the flag state ordinarily governs the internal affairs of a ship." *McCulloch v. Sociedad Nacional, etc.*, 372 U.S. 10, 83 S.Ct. 671, 677, 9 L.Ed.2d 547 (1963). In this case, Kloster's cruise ships are registered in the Bahamas. Consequently, applying Title VII in this context would infringe on Bahamian sovereignty.

For Title VII to apply in this sort of situation, therefore, the statute needs to contain a clear statement of congressional intent to that effect. Title VII, however, does not provide such a clear statement. The closest the Act comes to suggesting that Title VII applies to American citizens working aboard a foreign registered vessel (or, in general, abroad) is through a negative inference. Section 2000e–2 provides that Title VII "shall not apply to an employer with respect to the employment of aliens outside any State." One might infer from this language that the Act meant to include Americans working abroad, as opposed to Aliens working abroad, within its coverage. While such an inference may be possible, the Court concludes that the above referenced language does not amount to a clear statement by Congress that the Act extends to conduct within the jurisdiction of another sovereign. *See Boureslan*, supra. *Compare McCulloch v. Sociedad Nacional, etc.*, supra (As it lacks a clear statement to the contrary, the Na-

tional Labor Relations Act could not be construed as including foreign flag vessels within its coverage since such construction would exert United States jurisdiction over and apply its laws to internal management and affairs of vessels flying the Honduran flag.)

Two factors lead the Court to its decision that 2000e–1 does not amount to a clear Congressional statement that Title VII applies to conduct aboard a foreign flagged vessel owned by a foreign corporation. First, section 2000e–1 can just as easily lead to inferences other than the one chosen by the E.E.O.C. In particular, rather than imply that Title VII applies to Americans working abroad, section 2000e–1 may simply imply that Title VII applies to aliens working within the United States, as opposed to aliens working abroad. Second, other statutes regulating the employment relationship which do apply extraterritorially contain much more explicit language than Title VII. The Age Discrimination and Employment Act, for instance, explicitly provides that its protections extend to "any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country." 29 U.S.C. sec. 630(f). In light of the different implications that can be ascribed to section 2000e–1 and the explicit language found in other statutes which Congress has intended to apply extraterritorially, this Court finds that Title VII lacks a clear statement extending its protections to employees working aboard foreign flagged vessels operating primarily outside U.S. waters which are owned by foreign corporations.

### IV

For the reasons given above, this Court finds that Title VII does not extend to the alleged misconduct involved in this case. Accordingly, the Plaintiff's Application for an Order to Show Cause why an Administrative Subpoena Should not be Enforced is DENIED.

DONE AND ORDERED.